NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| HERBERT A. SMITH, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 6:10-CV-105-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| OHIO ADULT PAROLE AUTHORITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*     \*\*     \*\*     \*\*     \*\*

Herbert A. Smith is currently confined in the United States Penitentiary- McCreary ("USP-McCreary"), in Pine Knot, Kentucky. He has submitted a *pro se* "Writ of Mandamus," which is construed as a Petition for mandamus relief, and a Motion to proceed *in forma pauperis*. The Petition is now before the Court for screening. 28 U.S.C. § 1915e; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).[1] For the reasons set forth below, this matter will be dismissed.

**I.**

Petitioner alleges that the Ohio Adult Parole Authority ("APA") has placed a detainer on him as a parole violator, and he has not been able to convince the APA authorities to withdraw it. Smith claims that the detainer violates his rights under the Fifth and Fourteenth Amendments to the Constitution. The Petitioner further states that he has not filed a petition for habeas relief

---

[1] A *pro se* pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

because he is not seeking release. Rather, he has chosen to seek mandamus relief, because he is asking the Court to compel the Ohio APA to withdraw the detainer so that it will not gain custody of him.

Smith's theory is that the State of Ohio has no right to detain him because the detainer is based on an expired term and because the State twice had the opportunity to take custody of him but refused to do so, once in 1991 and again in 1994. At these times, he claims, the Ohio APA should have given him a final discharge and released him from parole. Therefore, he reasons, the Ohio APA should not be able to gain custody of him upon his release from federal custody.

In support of his claims, Petitioner describes events following several of his convictions. The Petitioner's first reference is to a 1976 Ohio conviction for kidnaping. After serving four and a half (4½) years of a five (5) to fifteen (15) year sentence, he was paroled in 1981. Next, in 1987, he was convicted of robbery in Texas, and served four (4) years of a two (2) to twenty (20) year sentence before being paroled in 1991. Smith alleges that during the time that he was incarcerated in Texas, Ohio had placed a detainer on him as a parole violator from his 1976 conviction.

Plaintiff next alleges that when Texas paroled the Petitioner in 1991, after communication between authorities in Texas and Ohio, "Ohio informed Texas that the Ohio APA no longer wanted custody of Smith and had no objection to Smith being released" from the Texas Department of Corrections. However, when Smith was returned to Texas as a parole violator, evidently later in 1991, Ohio placed the same parole violator detainer against him while he served three more years in Texas.

When Petitioner was released in Texas in 1994, "the plaintiff was transported to Ohio by

the Interstae [sic] Transport, at the request of Ohio." Once there, Smith alleges, he refused to waive a parole revocation hearing and demanded the revocation hearing to obtain his final release from any obligation to Ohio. However, Ohio released him five days later without the hearing which he requested.

In December of 1994, the Petitioner was convicted of robbery in Ohio and received a six (6) to fifteen (15) year sentence. He contends that the Ohio parole board told him that it added the new six (6) to fifteen (15) year sentence to the original five (5) to fifteen (15) year sentence, for a total of eleven (11) to thirty (30) years to be served. He complains that this meant his parole hearing was extended for seven (7) years until December of 2005, and so he was "forced to do an additional 5 years."

In May of 2007, Petitioner was again convicted of bank robbery, this time in federal court, and he was sentenced to ninety (90) months imprisonment. Smith is currently serving the federal sentence with the Ohio APA's detainer lodged against him. In addition to making factual allegations, the Petitioner cites *Morrissey v. Brewer*, 408 U.S. 484 (1972), as authority for the proposition that parolees are entitled to a revocation hearing to decide if in fact they are parole violators. Having passed up earlier opportunities to give him a hearing, the APA "cannot pick and choose if and when to violate a persons parole . . . by repeatedly filling [sic] the same detainer over again" for thirty-three (33) years.

Petitioner also states that Ohio's detainer has detrimental effects on him in the interim. The detainer was a mitigating factor in the calculating the sentence which he is now serving; prevents him from obtaining a lower custody status and transfer to a lower security prison; and denies him an early release to a halfway house.

3

## II.

The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue a writ of mandamus. The statute states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). However, "[m]andamus is a drastic remedy, to be invoked only in extraordinary situations where the petitioner can show a clear and indisputable right to the relief sought." *In re Parker*, 49 F.3d 204, 206 (6th Cir. 1995) (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-62 (1978)); *Kerr v. United States District Court*, 426 U.S. 394, 402-03 (1976). "'The general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary writ, may not be done with it. It lies only when there is practically no other remedy.'" *In re NLO, Inc.*, 5 F.3d 154, 156 (6th Cir. 1993) (quoting *Helstoski v. Meanor*, 442 U.S. 500, 505 (1979)).

The instant cause of action fails to meet the high standards warranting mandamus relief. In fact, the Petitioner has not established that he has any right to the relief which he requests from this Court, regardless of the procedural form chosen. As the Petitioner has admitted in naming the Ohio Adult Parole Authority as the Respondent, the entity against which he seeks relief is the Ohio APA. Based upon settled law, this Court is unable to provide the Petitioner with the relief he seeks.

A prisoner must apply to a State court for relief from a State detainer. *See Robinson v. People of the State of Illinois*, 752 F. Supp. 248 (N.D. Ill. 1990). A federal court has no superintending function or control over a state court. Federal courts have no general power to compel action by state officers, including state judicial officers. *Davis v. Lansing*, 851 F. 2d 72,

4

74 (2nd Cir. 1988); *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970).

Because the instant Petitioner wants to compel judicial action with regard to his *state* detainer, he must apply to a state court in Ohio where the detainer was issued, as state law issues are involved. *See Seward v. Heinze*, 262 F.2d 42 (9th Cir. 1958) (issues concerning whether sentencing state had waived its right to insist upon completion of the Petitioner's numerous state sentences was a question of state law); *McCowan v. Nelson*, 436 F.2d 758 (9th Cir. 1970) (whether California Adult Authority was required to promptly execute its order suspending petitioner's parole and whether petitioner was entitled to credit for time spent in Arizona jail awaiting extradition on Authority's order were state law questions not within competence of federal habeas corpus court).

As to the Petitioner's reliance on *Morrissey v. Brewer*, it is true that in *Morrissey*, the Supreme Court of the United States set out certain minimum due process requirements that must be met in order to revoke parole, analyzing the situation in terms of two stages: (1) an initial inquiry "in the nature of a 'preliminary hearing' to determine whether there is probable cause ... to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions," and (2) a revocation hearing leading to "a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." 408 U.S. at 488.

Once a parolee is arrested on a parole violation warrant, he is entitled to a probable cause hearing concerning the acts he is alleged to have committed. *Id.* at 485. It is conceivable that a parolee might violate the conditions of parole, but that these violations might not warrant revocation in every case, thus the need for a final revocation hearing in which he may dispute the

allegations that he violated conditions of parole and, if he did violate, the opportunity to introduce circumstances in mitigation to persuade the hearing body that the violation did not warrant revocation. *Id*. at 488.

The current Petitioner's situation differs from that in *Morrissey* in that Petitioner Smith was returned to prison for a new conviction and not because he violated a technical condition of his parole. In such a case, there is no need for a preliminary hearing because the subsequent criminal conviction conclusively establishes the parole violation. *See Carchman v. Nash*, 473 U.S. 716 (1985); *Moody v. Daggett*, 429 U.S. 78 (1976).

In *Moody*, the Supreme Court specifically held that there was no requirement for an immediate hearing. 429 U.S. at 78. In fact, the Court referred to *Morrissey*'s requirement of a hearing within a reasonable time after the parolee is taken into custody, and stated that "we established execution of the [parole violation] warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation." *Id.* at 87.

The Supreme Court concluded in *Moody* that it could not be said that the "parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrissey* sought to protect." *Id.* Thus, a petitioner such as Smith is not entitled to a final revocation hearing because his loss of liberty derives not from a parole violation warrant, but from his subsequent conviction. *Id.* at 86, n.7. To afford him a hearing when he is not eligible for parole because of the new conviction would be a futile gesture.

If Petitioner believes that the Ohio Adult Parole Authority has acted in contravention of state law, the petitioner must initiate proceedings within the state courts of Ohio to effectuate relief. Federal courts are without authority to issue writs of mandamus to direct state officials to

conform their conduct to state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

As to restrictions on the Petitioner at the prison because of the detainer, it is also well settled that no due process rights are implicated by the effect that the detainer is having on the petitioner's confinement, including ineligibility for placement in a halfway house. *See Moody*, 429 U.S. at 88, n.9. Based upon the foregoing reasons, the Court is required to dismiss the Petition for Smith's failure to state a claim upon which relief can be granted.

### III.

Accordingly, **IT IS ORDERED** as follows:

(1) Herbert A. Smith's Motion to Proceed *in forma pauperis* [R. 3] is **GRANTED**;

(2) Smith's Petition for Writ of Mandamus is **DENIED**, *sua sponte*, for failure to state a claim upon which the Court may grant relief.

(3) This action will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This the 5th day of May, 2010.

